UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: )
)
BROWN-MINNEAPOLIS TANK CO., )
) No. 11-14273-NLJ7
Debtor. )
_____ )
)
MICHAEL J. CAPLAN, Trustee, )
)
     Plaintiff, )
v. ) Adversary No._____
)
BMT ACQUISITION, LLC, ) **FILED UNDER SEAL**
BMT-NW ACQUISITION, LLC, )
CHARLES WILLIAM TRAVELSTEAD, )
LONGROAD ASSET MANAGEMENT LLC, )
BROADWAY PROPERTIES, LLC, and )
BROAD STREET TANK HOLDINGS CO., INC. )
     Defendants. )
_____ )

## COMPLAINT

Plaintiff, Michael J. Caplan, duly appointed Chapter 7 Trustee in the above captioned case (hereinafter referred to as "Trustee"), by and through counsel, brings this action against the defendants, and alleges as follows:

## NATURE OF COMPLAINT

The Trustee brings this action seeking: (i) to impose successor liability for the debts of the Debtor herein Brown-Minneapolis Tank Company, (hereinafter referred to as "Debtor" or "Old BMT"); (ii) the avoidance, or the recovery of the value, of fraudulent conveyances pursuant to 11 U.S.C. §§ 544, 548 and 550, New Mexico Uniform Fraudulent Transfer Act N.M.S.A. § 56-10-14 *et seq.*, and common law; (iii) the avoidance, or recovery of the value, of preferential transfers, pursuant to 11 U.S.C. §§ 547 and 550; (iv) the avoidance, or recovery of the value, of

unauthorized postpetition transfers pursuant to 11 U.S.C. §§ 549 and 550; (v) turnover of property of the bankruptcy estate pursuant to 11 U.S.C. § 542; (vi) for damages for breaches of fiduciary duties to creditors of Old BMT pursuant to 11 U.S.C. §§ 541 and 544; (vii) for damages for aiding and abetting the breaches of fiduciary duties to creditors of Old BMT pursuant to 11 U.S.C. §§ 541 and 544, (viii) the disallowance of claims pursuant to 11 U.S.C. § 502, (ix) the equitable subordination of claims pursuant to 11 U.S.C. § 510, and (x) the recharacterization of claims from debt to equity.

## JURISDICTION AND VENUE

1.    Jurisdiction of the claims asserted herein is proper pursuant to 28 U.S.C. §§157 and 1334 as a civil proceeding arising from or related to the above captioned bankruptcy case filed under Chapter 7 of Title 11 of the Bankruptcy Code and as a core proceeding pursuant to 28 U.S.C. §157(b).

2.    Venue is proper in this Court pursuant to 28 U. S.C. §1409 (a) and (c) and this proceeding is properly initiated pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## PARTIES

3.    The above captioned bankruptcy case (hereinafter sometime referred to as the "Bankruptcy Case") was commenced by an involuntary Bankruptcy Petition filed on September 28, 2011 by Ranger Steel Services, Inc., Pace Iron Works, Inc. and American Alloy Steel, Inc. (collectively sometimes hereinafter referred to as the "Petitioning Creditors"). Old BMT was determined to be insolvent and an order for relief under Chapter 7 of the Bankruptcy Code was entered against Old BMT by the Court's Order Granting Relief on Involuntary Petition entered

on October 28, 2011 and an Amended Order Granting Relief on Involuntary Petition entered on October 30, 2011 in the Bankruptcy Case.

4. Trustee is the duly appointed and acting trustee of the bankruptcy estate of Old BMT and is the proper party in interest and has standing to bring the direct and derivative claims asserted herein pursuant to 11 U.S.C. §541.

5. Defendant BMT Acquisition, LLC (hereinafter referred to as "BMT Acquisition") is a limited liability company formed in the State of Delaware on June 10, 2011 and may be served with process through its registered agent Corporation Service Company at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. BMT Acquisition also maintains a registered office at the offices of Old BMT at 8301 Broadway SE, Albuquerque, New Mexico, 87105.

6. Defendant BMT-NW Acquisition, LLC (hereinafter referred to as "BMT-NW Acquisition") is a limited liability company formed in the State of Delaware on June 10, 2011 and may be served with process through its registered agent Corporation Service Company at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. BMT Acquisition and BMT-NW Acquisition are sometimes hereinafter collectively referred to as "New BMT." New BMT was formed by Longroad Asset Management LLC for the sole purpose of acquiring the assets of Old BMT and Brown-Minneapolis Tank-Northwest, LLC ("Old BMT-NW") by "friendly foreclosure" and continuing the business of New BMT.

7. Defendant Charles William Travelstead ("Travelstead") is a resident of the state of New Mexico. Travelstead may be served with process by and through his attorney Matthew E. Jackson of Peifer, Hanson & Mullins, P.A., P.O. Box 25245, Albuquerque, NM 87125, who has been authorized, and has agreed, to accept service on his behalf. Travelstead was the Chief Executive Officer, Director, sole stockholder and principal manager of Old BMT from and after

3

its formation in 1988. On information and belief, Travelstead was also the Chief Executive Officer, Director, sole stockholder and principal manager of Old BMT-NW. Travelstead is also the Chief Executive Officer and principal manager of the New BMT entities. Travelstead is also a significant stockholder in Broad Street Tank Holdings Co., Inc.

8.     Defendant Longroad Asset Management LLC ("hereinafter referred to as "Longroad") is a limited liability company formed in the State of Delaware and may be served with process through its registered agent The Company Corporation at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

9.     Defendant Broadway Properties, LLC (hereinafter referred to as "Broadway Properties") is a limited liability company formed in the State of New Mexico and may be served with process through its registered agent Charles W. Travelstead at its registered offices, which it owns and occupies, at 8301 Broadway Blvd. S.E., Albuquerque, New Mexico, 87105. Broadway Properties is owned 99% by Travelstead and 1% by Travelstead's spouse.

10.    Defendant Broad Street Tank Holdings Co., Inc. (hereinafter referred to as "Broad Street"), is a limited liability company formed in the State of Delaware and may be served with process through its registered agent Corporation Service Company at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. Broad Street was formed by Longroad on June 14, 2011 to hold 100% of the ownership interest of the New BMT entities.

## BACKGROUND FACTS

11.    Before and during May of 2011, Old BMT had four outstanding loans with JPMorgan Chase Bank, N.A. ("Chase Bank") which were secured by virtually all of the assets of Old BMT (the credit agreements, promissory notes, security documents, and guaranties evidencing or securing these loans are hereinafter collectively referred to as the "Old BMT

4

Chase Bank Loans"). As of May of 2014, the aggregate outstanding principle balance of the Old BMT Loans was $4,707,049.91. The Old BMT Chase Bank Loans were personally guaranteed by Travelstead.

12. During this same time, Old BMT-NW also had two outstanding loans with Chase Bank which were secured by virtually all of the assets of Old BMT-NW (the credit agreements, promissory notes, security documents, and guaranties evidencing or securing these loans are hereinafter collectively referred to as the "Old BMT-NW Chase Bank Loans"). The Old BMT-NW Chase Bank Loans were also personally guaranteed by Travelstead. As of May of 2014, the aggregate outstanding principle balance of the Old BMT-NW Loans was $2,885,333. The Old BMT Chase Bank Loans and the Old BMT-NW Chase Bank Loans are sometimes hereinafter collectively referred to as the "Chase Bank Loans").

13. Beginning in May of 2011 Longroad entered into discussions with Chase Bank and Travelstead to acquire the Chase Bank Loans. Because of its prior dealings with Chase Bank, Longroad knew or reasonably believed that it would be able to acquire the Old BMT Chase Bank Loans for less than fifty cents on the dollar and therefore performed no due diligence before acquiring the Old BMT Chase Bank Loans. Longroad further believed that Old BMT's assets were more valuable than the reduced price for which Longroad could—and ultimately did—acquire Old BMT's assets. Longroad did not have the Old BMT assets acquired by New BMT appraised.

14. Before Longroad, through BMT Acquisition, purchased the Old BMT Chase Bank Loans, in late May or early June of 2011, Longroad entered into discussions with Travelstead to arrange for Longroad's acquisition of the assets of Old BMT and Old BMT-NW, in new companies to be formed by Longroad through an agreed foreclosure or bankruptcy sale.

5

On June 2, 2011 Longroad sent a written proposal to Travelstead proposing that a portion of Longroad's investment in acquiring the Old BMT Chase Bank Loans and obtaining the assets of Old BMT would be converted to equity of a holding company (which eventually became Broad Street) which would own all of BMT Acquisition. Longroad further proposed that Travelstead would have an immediate five percent (5%) equity ownership in the holding company and increasing amounts of equity ownership to twenty percent (20%) tied to distributions to Longroad equal to various multiples of Longroad's money "invested" in the transaction. While the terms of proposal changed in certain details as the parties negotiated after June 2, 2011, from the shareholder agreement and employment agreement Travelstead eventually entered into with Broad Street (as part of the Friendly Foreclosure defined below), the terms Broad Street and Travelstead ultimately agreed to were essentially the same as outlined in the June 2, 2011 proposal.

15.     On or about June 16, 2011 Longroad caused New BMT to purchase the Chase Bank Loans from Chase Bank by the terms of certain Loan Purchase and Sale Agreements (the "Loan Purchase Agreements"). Pursuant to the Loan Purchase Agreements, New BMT purchased the Old BMT Chase Bank Loans, which as of June 16, 2011 had an outstanding principal balance of $4,707,049.91 plus accrued interest, for the sum of $2,147,872.82. New BMT also purchased the Old BMT-NW Chase Bank Loans, which as of June 16, 2011 had an outstanding principal balance of $2,885,333 plus accrued interest, for an approximately $1,350,000.

16.     Immediately after the closing of New BMT's purchase of the Chase Bank Loans, as of June 17, 2011, New BMT (as Lender) entered into a certain "Amendment to Credit Agreement and Line of Credit Note Brown-Minneapolis Tank Company" (the "Old BMT Loan

6

Amendment") with Old BMT, Travelstead and Broadway Properties by the terms of which New

BMT agreed, subject to conditions, to advance up to $841,415.00 to Old BMT. The Old BMT

Loan Amendment further re-defined the term "Liabilities" in the security agreements securing

the Old BMT Chase Bank Loans to include all of the indebtedness of Old BMT-NW to New

BMT. The Old BMT Loan Amendment therefore caused all of Old BMT's property which

served as collateral for the Old BMT Chase Bank Loans to also secure the Old BMT-NW's

Chase Bank Loans purchased by New BMT. The Chase Bank's Loans were not cross-

collateralized before the execution of the Old BMT Loan Amendment.

17.     In the Old BMT Loan Amendment, New BMT also obtained a security interest in

significant new collateral described as:

> all investments, common shares, equity securities, or membership interests of
> Borrower [Old BMT] or Brown Minneapolis Tank-Northwest, LLC in any
> corporation, partnership or limited liability company (including, but not limited to
> any and all of Borrower's or Brown-Minneapolis Tank Northwest LLC's interests
> in Kleerwater Technologies, LLC, Super Technologies, LLC, Brown-Minneapolis
> Tank-Canada Co. Brown-Minneapolis Tank ULC); any and all general or limited
> partnership interests; any and all profits interests or rights to distributions; any and
> all patents, licenses, trademarks, copyrights, intellectual property or any rights
> whatsoever in any of the foregoing.

18.     As part of the Old BMT Loan Amendment New BMT also required Old BMT to

execute in favor of BMT-NW Acquisition a Guaranty by the terms of which Old BMT became

liable to BMT-NW Acquisition for all of Old BMT-NW's indebtedness to BMT-NW

Acquisition. Old BMT was not liable for the indebtedness of Old BMT-NW prior to the

execution of this Guaranty.

19.     After the Old BMT Loan Amendment was executed, New BMT apparently

advanced $841,415.00 to Old BMT.

20.     By correspondence dated July 13, 2011, BMT Acquisitions made a proposal

(hereinafter referred to as the "Proposal") to Old BMT for Old BMT to transfer all of its assets to

7

BMT Acquisitions in exchange for $2,600,000 credit on the Old BMT Chase Bank Loans, purchased by BMT Acquisition. The proposal allocated $2,000,000 of said credit to assets that were subject to a security interest in favor of BMT Acquisitions under Article 9 of the Uniform Commercial Code (hereinafter referred to as the "UCC") and allocated $600,000 to Old BMT's assets which were not subject to a security interest in favor of BMT Acquisitions under Article 9 of the UCC. The Proposal was ultimately accepted by Old BMT which resulted in the execution of a certain Foreclosure Agreement dated July 29, 2011 between Old BMT and BMT Acquisitions (the "Foreclosure Agreement").

21.    The Foreclosure Agreement recited that Old BMT was indebted to BMT Acquisitions in the principal sum of $5,548,465. In exchange for Old BMT's transfer of all of its assets to BMT Acquisition, Old BMT was given $2,600,000 credit on the Old BMT Chase Bank Loans as set forth in the Proposal. The transactions described in the Foreclosure Agreement, including the transfer of assets from Old BMT to BMT Acquisitions (hereinafter sometimes collectively referred to as the "Friendly Foreclosure"), closed on July 29, 2011.

22.    One of the assets transferred by Old BMT to BMT Acquisitions under the Foreclosure Agreement was a certain 1977 Piper PA-31T-620 Cheyenne II aircraft, serial number 31T-7720069 (the "Airplane"). Old BMT was registered as the owner of the Airplane with the United States Department of Transportation, Federal Aviation Administration (the "FAA") until September 26, 2011 when the registration of the Airplane in the name of BMT Acquisition was filed by the FAA and became effective.

23.    Despite the fact that BMT Acquisition did not become the registered owner of the Airplane until September 26, 2011, BMT Acquisition and Broad Street (BMT Acquisition's sole owner) filed a notice of security interest in the Airplane in favor of Broad Street, and reciting that the security interest was granted to secure a promissory note given by BMT Acquisition to Broad

Street dated July 29, 2011 in the principal sum of $1,500,000 which was to be paid on or before March 1, 2013. This notice of security interest was filed on October 17, 2011 and has not been released.

24.     For many years prior to July 29, 2011, Old BMT conducted business, held itself out to the public and incurred debts and liabilities consistently utilizing its distinctive logo and trademark consisting of stylized lettering for "BMT" (hereinafter collectively referred to as the "Logo"). The Logo was registered by Old BMT on with the United States Patent and Trademark Office (hereinafter referred to as the "USPTO"). Old BMT's Logo was part of the assets transferred by Old BMT to BMT Acquisitions on July 29, 2011 under the Foreclosure Agreement. BMT Acquisitions, however, did not register its ownership of the Old BMT Logo with the USPTO until April 12, 2012, which was approximately seven months after the Bankruptcy Case was filed.

25.     Subsequent to acquiring all the assets of Old BMT on July 29, 2011, BMT Acquisition has conducted business, held itself out to the public and incurred debts and liabilities under the same name of Brown Minneapolis Tank , utilizing the same/identical BMT Logo,  the same content information in its sales and promotion materials, on its website and other resources and listing the same contact addresses.

26.     Subsequent to acquiring all the assets of Old BMT, BMT Acquisition seamlessly continued the business of Old BMT by means of a Transition Contract with Old BMT, by utilizing key management and essentially the same work force of Old BMT, and by continuation of operations with Old BMT's plant and equipment, producing the same products.

27.     Charles Travelstead, CEO and the sole or controlling stockholder of Old BMT and related entities, continues as Chief Executive Officer of New BMT and related entities, and is a significant stockholder in Broad Street which owns New BMT.

9

28. Old BMT ceased its ordinary business operations transferring all its ordinary business assets to BMT Acquisition, but BMT Acquisition's website, advertising and promotion materials have consistently made express representations to customers, creditors and the general public confirming that it is a mere continuation and successor to Old BMT. Such representations include (among others) the following:

> "Since 1935, Brown-Minneapolis Tank Co. (BMT) and more recently its affiliates BMT-NW and Graver Tank Co. have been recognized leaders in supplying large steel plate fabrication of tanks and structures, engineering design, pressure vessels and construction services. We set the industry standard with best in class, award winning and "customer comes first" approach to manufacturing and design. We have strategically located shops throughout North America and we are licensed in all fifty states and Canada to design, fabricate and install steel storage tanks meeting tough federal government EPA quality standards and conforming to all industry standards such as API, AWWA, ASME and other design and manufacturing codes. For over 75 years our reputation has been backed by quality, competitive pricing, on-time delivery and a commitment to safety. Our team has expertise in capital and repair projects and provides service for petrochemicals, water, gas, biofuels, misc. other liquids, dry chemical products as well as dry bulk materials. Contact us to provide more information on any of our products or services."

> "BMT's 50-year reputation is backed by quality, competitive pricing, on-time delivery, and a commitment to safety. Our team has expertise in capital and repair projects. Contact us to provide more information on any of the following products . . ."

29. Travelstead was the 100% owner, incorporator, director, president, CEO, and treasurer of Old BMT. Travelstead was the representative of Old BMT who negotiated the terms of the terms of the Friendly Foreclosure, Foreclosure Agreement and related documents on behalf of Old BMT. Travelstead agreed to everything requested or demanded by Longroad, declining only to provide Longroad with his personal financial statement.

30. Following the transfer to New-BMT, Travelstead became the president and CEO of those entities with an annual salary of $250,000, plus significant benefits. He also received an initial 5% ownership interest in the holding company with performance incentives that allow him

to acquire an additional 20% and the option to acquire the Airplane, worth approximately $650,000, for only one dollar ($1.00).

31.     As president and CEO of New BMT, Travelstead retains substantial control and possessory interest over BMT Acquisition business operations whereby BMT Acquisition continues the same business, operates out of the same location, utilizes the same plant, equipment and employees, and serves the pre-existing customers of Old BMT.

32.     In the time leading up to the transfer, Old BMT was party to an active binding arbitration with its major creditor and other pending litigation with other creditors. Longroad and Old BMT carefully and intentionally did not disclose anything concerning Longroad's planned acquisition of Old BMT's Chase Bank Loans or the plans for the Friendly Foreclosure to any of the litigating creditors. The Friendly Foreclosure was scheduled to occur on the same day as, or within a day of, a major pre-trial hearing in the arbitration. Neither Old BMT's arbitration counsel nor creditor's counsel were advised of the transaction until it was announced as completed during the arbitration hearing on July 28, 2011. Old BMT refused to produce to the Arbitrator or creditor's counsel any financial statements or documents confirming the transaction, asserting confidentiality agreements.

33.     The Arbitrator in the binding arbitration awarded judgment against Old BMT in excess of $2,000,000 immediately after the hearing on July 28, 2011. Although the $2,000,000 ward was perfected as a judgment in New Mexico, this judgment was not initially listed as a debt in Old BMT's bankruptcy schedules filed in this Bankruptcy Case.

34.     The Friendly Foreclosure transaction resulted in Old BMT being left with no assets or ability to continue business, Old BMT was left insolvent, and a complaint commencing this Chapter 7 Bankruptcy Case was filed on September 28, 2011.

35.    The transfer of Old BMT's assets to BMT Acquisition under the Friendly Foreclosure resulted in an unrealized gain on New BMT's financial statements, as required by GAAP, in the approximate sum of $4,800,000.

36.    BMT Acquisition filed its proof of claim in the above captioned bankruptcy case on April 24, 2013, which was docketed in the Court's claim register as claim number 24, in the principal amount of $3,569,755, based on its purchase of the Old BMT-NW Chase Bank Loans, claiming to be a secured creditor of Old BMT, with the amount of the secured portion of the claim listed as "unknown."

37.    BMT Acquisition-NW filed its proof of claim in the above captioned bankruptcy case on April 24, 2013, which was docketed in the Court's claim register as claim number 23, in the principal amount of $1,811,064, based on its purchase of the Old BMT-NW Chase Bank Loans and on Old BMT's Guaranty of Old BMT-NW's indebtedness to BMT-NW Acquisition, claiming to be a secured creditor of Old BMT, with the amount of the secured portion of the claim listed as "unknown."

### FIRST CLAIM FOR RELIEF

#### Successor Liability of BMT Acquisition

38.    Under Section 544 (a) of the Bankruptcy Code, Trustee may bring any claims on behalf of the bankruptcy estate which a hypothetical judgment creditor of the debtor could assert against third-parties. Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

39.    BMT Acquisition's business is a mere continuation of the business of Old BMT. Longroad which formed Broad Street and BMT Acquisition was aware of a major arbitration claim and other litigation pending against Old BMT and was aware of the extent of Old BMT's

unsecured debt at the time of the transfers of Old BMT's assets to BMT Acquisition. The business operations of Old BMT continued as BMT Acquisition. BMT uses the same building and facilities that Old BMT used for its operation. BMT Acquisition uses the same or substantially the same work force as Old BMT. BMT Acquisition uses the same, or substantially the same, management and supervisory personnel as Old BMT. BMT Acquisition's work force engages in the same work and under the same conditions as Old BMT. BMT Acquisition uses the same machinery, equipment and methods or production as Old BMT and makes the same products as Old BMT.

40. The transfers from Old BMT to BMT Acquisition as part of the Friendly Foreclosure constitute a *de facto* merger between Old BMT and BMT Acquisition. BMT Acquisition has continued the same business which Old BMT conducted before the Friendly Foreclosure and represents to the public in its advertising, sales and promotional materials and website that it is Old BMT by referring to its history since 1935, its 75-year reputation and its 50-year reputation in various promotional materials. Travelstead who owned Old BMT has a significant ownership interest in Broad Street, the holding company which owns 100% of BMT Acquisition, and serves as the CEO of BMT Acquisition. Old BMT ceased operations immediately after the transfer of all assets to BMT Acquisition under the Friendly Foreclosure and was placed in this Chapter 7 bankruptcy shortly after the transfer. As part of the Friendly Foreclosure, those creditors of Old BMT which were necessary for the uninterrupted continuation of Old BMT's business were paid by BMT Acquisition.

41. A claims bar date was set in this Bankruptcy Case for July 3, 2011. Timely filed claims representing the indebtedness of Old BMT to its creditors have been filed in this matter in the total aggregate sum (excluding the claims of New BMT which should be disallowed) of

$3,423,114.57. BMT Acquisition is liable for all of the debts of Old BMT as a mere continuation of Old BMT or as a result of a *de facto* merger with Old BMT.

WHEREFORE, Trustee prays that this Court grant judgment to Trustee and against New BMT on the First Class Claim for Relief determining that BMT Acquisition is liable for all claims filed in the above captioned bankruptcy case representing the indebtedness of Old BMT to its creditors in the total aggregate sum (excluding the claims of New BMT which should be disallowed) of not less than $3,423,114.57, for prejudgment interest to the fullest extent allowed by law, post judgment interest until any judgment rendered herein is paid, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

## SECOND CLAIM FOR RELIEF

### Breach of Fiduciary Duties By Travelstead

42.    Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

43.    Under Section 544 (a) (1) and (2) of the Bankruptcy Code, Trustee may bring any claims on behalf of the bankruptcy estate which a hypothetical judicial lien creditor and a creditor of the debtor with an unsatisfied execution against the debtor, could assert against third-parties. The claims asserted herein are property of the debtor's bankruptcy estate pursuant to Section 541 of the Bankruptcy Code and Trustee may bring these claims on behalf of the Bankruptcy estate pursuant to Section 544 (a) of the Bankruptcy Code.

44.    Travelstead was the was the Chief Executive Officer, Director, sole stockholder and principal manager of Old BMT before and at the time of the transfer of Old BMT's assets to BMT Acquisition in the Friendly Foreclosure.  Travelstead owed fiduciary duties to Old BMT as

14

well as creditors of Old BMT at the time he agreed to and caused Old BMT to engage in the transfers to BMT Acquisition which left Old BMT insolvent.

45.     Travelstead breached his fiduciary duties to Old BMT and its creditors and personally profited at the expense of Old BMT's creditors by: (a) allowing Longroad to structure the Friendly Foreclosure transaction however it chose to the detriment of Old BMT's Creditors and hiding the transaction from Old BMT's creditors; (b) placing his own personal interests above Old BMT and its creditors and profiting therefrom by: (1) obtaining complete release of his personal guarantees of all of Old BMT's debt; (2) apparently eliminating his personal debt to the corporation in excess of $625,000; (3) receiving an option to acquire the corporate airplane worth in excess of $600,000 for one dollar ($1); (4) obtaining a contract of employment as CEO of BMT Acquisition at an annual salary of $250,000 plus significant benefits; and (5) receiving a 5% stock ownership interest in Broad Street, the holding company which owns New BMT, with performance options to acquire an additional 20% stock ownership interest. The value of these personal benefits obtained by Travelstead in breach of his fiduciary duties exceeds the amount of the aggregate claims of creditors in this Bankruptcy Case (excluding claims of New BMT).

WHEREFORE, Trustee prays that this Court grant judgment in favor of Trustee and against Travelstead on the Second Claim for Relief for damages in at least the amount of $3,423,114.37 and forfeiture of all other profit or gain received by Travelstead from the transaction, prejudgment interest to the fullest extent allowed by law, post judgment interest until any judgment rendered herein is paid, punitive damages to the extent permitted by law, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

## THIRD CLAIM FOR RELIEF

### Aiding and Abetting Breach of Fiduciary Duty By Longroad

46.     Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

47.     Under Section 544 (a) of the Bankruptcy Code, Trustee may bring any claims on behalf of the bankruptcy estate which a hypothetical judgment creditor of the debtor could assert against third-parties and may bring any claims owned by the debtor on behalf of the Bankruptcy estate pursuant to Section 541 of the Bankruptcy Code.

48.     Longroad was fully aware that Travelstead was the Chief Executive Officer, Director, sole stockholder and principal manager of Old BMT before and at the time of the transfer of Old BMT's assets to New BMT and that Travelstead owed fiduciary duties to Old BMT, as well as to creditors of Old BMT, at the time he caused Old BMT to engage in the transaction which left Old BMT insolvent.

49.     Longroad designed and implemented the entire transaction and aided and abetted Travelstead's breach of his fiduciary duties to Old BMT and its creditors by offering and giving Travelstead inducements to cause Old BMT to agree to all terms of the transaction, which damaged Old BMT's creditors.

50.     Longroad's principals and agents had numerous communications with Travelstead and made several trips to Travelstead's/Old BMT's office in Albuquerque, New Mexico in the course of aiding and abetting Travelstead's breaches of his fiduciary duties, thereby committing tortious acts in New Mexico that damaged Old BMT's creditors. The damages caused to Old BMT's creditors by Longroad's tortious aiding and abetting Travelstead's breaches of his fiduciary duties exceed the aggregate claims of creditors in this Bankruptcy Case (excluding claims of New BMT).

16

WHEREFORE, Trustee prays the this Court grant judgment to the Trustee and against Longroad on the Third Claim for Relief for damages in at least the amount of $3,423,114.37, prejudgment interest to the fullest extent allowed by law, post judgment interest until any judgment rendered herein is paid, punitive damages to the extent permitted by law, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

### FOURTH CLAIM FOR RELIEF

**Count I - Fraudulent Conveyance Against BMT Acquisition Pursuant to New Mexico Uniform Fraudulent Transfer Act N.M.S.A. § 56-10-18 (A) (1) and 11 U.S.C. 544 (b) and Pursuant to 11 U.S.C. §§548 (a) (1) (A) and 550.**
**(The Friendly Foreclosure)**

51.     Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

52.     Under Section 548 (a)(1)(A) of the Bankruptcy Code, Trustee may avoid or set aside any transfers made with actual intent to defraud creditors. Under Section 544 (a) of the Bankruptcy Code, Trustee may bring any claims on behalf of the bankruptcy estate which a hypothetical judgment creditor of the debtor could assert against third-parties and may bring any claims owned by the debtor on behalf of the Bankruptcy estate pursuant to Section 541 of the Bankruptcy Code.

53.     The transfers of the property of Old BMT to BMT Acquisition which occurred as part of the Friendly Foreclosure were made with the actual intent to defraud existing creditors of Old BMT and were fraudulent pursuant to the New Mexico Uniform Fraudulent Transfer Act, N.M.S.A. § 56-10-18 (A) (1), and pursuant to Section 548 (a) (1) (A) of the Bankruptcy Code.

54.     At the time of the transfers of the property of Old BMT to BMT Acquisition, the Petitioning Creditors, and many others, as shown by the Old BMT amended bankruptcy

schedules and statement of financial affairs filed in the above captioned bankruptcy case, were existing creditors of Old BMT.

55.     The fraudulent intention of Old BMT and BMT Acquisition are established by the following badges of fraud under the New Mexico Uniform Fraudulent Transfer Act, which are also used by bankruptcy courts in establishing fraudulent intent under Section 548 (a) (1) (A):

(a)     **The debtor retained possession or control of the property transferred after the transfer.  N.M.S.A. § 56-10-18(B)(2).** Travelstead was the 100% owner, incorporator, director, president, CEO, and treasurer of BMT.  Following the transfers to BMT Acquisition, Travelstead became the president and CEO of BMT Acquisition.  He received an initial 5% interest in the holding company with performance incentives that allow him to acquire an additional 20%.  Under this arrangement, Travelstead retains substantial control and possessory interest over BMT Acquisition.  Immediately after the transfers, BMT Acquisition continued the same business, operated out of the same location, utilized the same plant equipment and employees, and served the pre-existing customers of Old BMT in addition to new customers of BMT Acquisitions.

(b)     **The Friendly Foreclosure and transfer of the assets to BMT Acquisition were concealed.  N.M.S.A. § 56-10-18(B)(3).** In the time leading up to the transfer, Old BMT was party to an active binding arbitration pursuant to contract with its major creditor and was party to litigation with other creditors. Longroad and Old BMT carefully and intentionally did not disclose anything to any of Old BMT's creditors in litigation or arbitration concerning Longroad's planned acquisition of Old BMT's debt or the plans to continue the business as BMT Acquisition. The Friendly Foreclosure was scheduled to occur the same day as a major pre-trial hearing in a pending arbitration with Old BMT's largest creditor. Neither Old BMT's own arbitration counsel nor creditor's

18

counsel were advised of the transaction until its closing was announced at the arbitration hearing on July 28, 2011. Old BMT refused to produce to the Arbitrator or creditor's counsel any financial statements or documents confirming the transaction, asserting confidentiality agreements.

(c) **Prior to the transfer, the debtor had been sued or threatened with suit. N.M.S.A. § 56-10-18(B)(4).** The binding arbitration between Old BMT and its major creditor was pending and being scheduled for pre-trial hearing while the transaction was planned. The creditor obtained judgment in excess of $2,000,000 against Old BMT based on the Award entered by the Arbitrator immediately after the July 28, 2011 hearing. Additionally, Old BMT's statement of financial affairs filed in the Bankruptcy Case shows thirteen other lawsuits pending against Old BMT when this Bankruptcy Case was filed.

(d) **The transfer was of substantially all of the debtor's assets. N.M.S.A. § 56-10-18(B)(5).** The Friendly Foreclosure resulted in Old BMT being left with no assets or ability to continue business, and it was placed into this involuntary Bankruptcy Case a short time later.

(e) **An unconscionable discrepancy between the value of the property transferred and the consideration received. N.M.S.A. § 56-10-18(B)(8).** Because of its prior dealings with the original creditor of Old BMT, Chase Bank, Longroad knew or reasonably believed that it would be able to acquire the Old BMT Chase Bank Loans for less than fifty cents on the dollar and therefore performed no due diligence before acquiring the Chase debt. Longroad further believed that BMT's assets were more valuable than the reduced price for which Longroad could—and ultimately did—acquire the Old BMT Chase Bank Loans. BMT Acquisition purchased the Old BMT Chase Bank

Loans with an aggregate principal balance of $4,707,049.91 for the sum of $2,147,872.82. BMT Acquisition did not have the assets acquired by BMT Acquisition in the Friendly Foreclosure appraised, but recognized an unrealized gain on the transfer of the assets as part of the Friendly Foreclosure on New BMT's financial statements of approximately $4,800,000, as required by GAAP. The majority of that gain, upon information and belief, was attributable to the transferred assets of Old BMT. Old BMT was only given credit for $2,600,000 as a result of the Friendly Foreclosure and was still obligated to BMT Acquisition in the principal and interest sum of $3,569,775 based on BMT Acquisition's proof of claim filed herein.

(f) **The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. N.M.S.A. § 56-10-18(B)(9).** The Friendly Foreclosure transaction resulted in Old BMT being left with no assets or ability to continue business and this involuntary Bankruptcy Case was commenced shortly thereafter.

(g) **The transfer occurred shortly before or shortly after a substantial debt was incurred. N.M.S.A. § 56-10-18(B)(10).** The Friendly Foreclosure occurred on or the day after the pre-trial hearing at which the Arbitrator entered an Award which resulted in a judgment in favor of a major creditor and against Old BMT in excess of $2,000,000.

(h) **The debtor transferred the essential assets of the business to a lienor who transferred the asset to an insider of the debtor.** The Friendly Foreclosure constituted the transfer of the essential assets of Old BMT to a BMT Acquisition who was a lienor by virtue of its purchase of the Old BMT Chase Bank loans. The control and indirect partial ownership of these assets were transferred back to Travelstead by virtue

of his employment agreement and stockholder agreement with Longroad under which Travelstead: (a) became the president and CEO of BMT Acquisition; (b) received an initial 5% interest in the holding company with performance incentives that allow him to acquire an additional 20%; and (c) received an option to purchase the Old BMT Airplane for One Dollar ($1.00).

56.     As a result of the fraudulent transfer of Old BMT's assets to BMT Acquisition as described above, Trustee is entitled to avoid the transfer and recover the property transferred or the value thereof from BMT Acquisition pursuant to N.M.S.A. § 56-10-18 (B) (1–11) and Section 550 of the Bankruptcy Code.

WHEREFORE, Trustee prays that this Court grant judgment in favor of the Trustee and against BMT Acquisition on Count I of the Fourth Claim for Relief avoiding the transfer of the property of Old BMT to BMT Acquisition, for the recovery of the assets of Old BMT, or judgment for the value of the assets as may be determined at trial, prejudgment interest to the fullest extent allowed by law, post judgment interest until any judgment rendered herein is paid, punitive damages to the extent allowed by law, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

### Count II - Fraudulent Conveyance Against BMT Acquisition
### Pursuant to New Mexico Common Law
### (The Friendly Foreclosure)

57.     Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

58.     Under Section 544 (a) of the Bankruptcy Code, Trustee may bring any claims on behalf of the bankruptcy estate which a hypothetical judgment creditor of the debtor could assert

against third-parties and may bring any claims owned by the debtor on behalf of the Bankruptcy estate pursuant to Section 541 of the Bankruptcy Code.

59. Under New Mexico common law, a transfer of property may be set aside if the transfer was made by the parties with the intent to delay, hinder or defraud creditors of the transferee.

60. To determine the parties fraudulent intent, New Mexico courts apply the essentially same badges of fraud set forth in N.M.S.A. § 56-10-18 (B) (1–11).

61. The conduct of New BMT Acquisition described in Count I of this Fourth Claim for Relief also establishes the badges of fraud for a fraudulent conveyance under New Mexico common law.

62. Trustee is entitled to avoid the transfer and recover the property transferred from Old BMT to BMT Acquisition or the value thereof from BMT Acquisition pursuant to New Mexico common law.

WHEREFORE, Trustee prays that this Court grant judgment in favor of the Trustee and against BMT Acquisition on Count II of the Fourth Claim for Relief setting aside the transfer of the property of Old BMT to BMT Acquisition, for the recovery of the assets of Old BMT, or judgment for the value of the assets as may be determined at trial, prejudgment interest to the fullest extent allowed by law, post judgment interest until any judgment rendered herein is paid, punitive damages to the extent allowed by law, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

22

**Count III - Fraudulent Conveyance Against BMT Acquisition Pursuant
to New Mexico Uniform Fraudulent Transfer Act N.M.S.A. § 56-10-19 (A)
and 11 U.S.C. 544 (b) and 11 U.S.C. §548 (a) (1) (B) and 550.
(The Friendly Foreclosure)**

63.     Under Section 548(a)(1)(B) of the Bankruptcy Code, the Trustee may avoid or set aside any transfers that are constructively fraudulent as to creditors. Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

64.     The transfers of the property of Old BMT to BMT Acquisition which occurred as part of the Friendly Foreclosure were constructively fraudulent pursuant to New Mexico Uniform Fraudulent Transfer Act N.M.S.A. § 56-10-19 (A) and pursuant to Section 548 (a) (1) (B) of the Bankruptcy Code.

65.     At the time the transfers of the property of Old BMT to BMT Acquisition were made, the Petitioning Creditors, and many other creditors, as shown by the Old BMT amended bankruptcy schedules and statement of financial affairs filed in the above captioned bankruptcy case, were existing creditors of Old BMT. Old BMT was left insolvent after the transfers of the property of Old BMT to BMT Acquisition which occurred as part of the Friendly Foreclosure were made.

66.     Old BMT did not receive reasonably equivalent value for the transfers of the property of Old BMT to BMT Acquisition. BMT Acquisition purchased the Old BMT Chase Bank Loans with an aggregate principal balance of $4,707,049.91 for the sum of $2,147,872.82. BMT Acquisition did not have the assets acquired by New BMT in the Friendly Foreclosure appraised but recognized an unrealized gain on the transfer of the assets as part of the Friendly Foreclosure on New BMT's financial statements of approximately $4,800,000, as required by GAAP. The majority of that gain, upon information and belief, was attributable to the transferred assets of Old BMT. Old BMT was only given credit for $2,600,000 as a result of the Friendly

23

Foreclosure and was still obligated to BMT Acquisition in the principal and interest sum of $3,569,775 based on BMT Acquisition's proof of claim filed in the above captioned bankruptcy case.

67.     As a result of the fraudulent transfer of Old BMT's assets to BMT Acquisition as described above, Trustee is entitled to avoid the transfer and recover the property transferred or the value thereof from BMT Acquisition pursuant to N.M.S.A. § 56-10-18(B)(1–11) and Section 550 of the Bankruptcy Code.

WHEREFORE, Trustee prays that this Court grant judgment in favor of Trustee and against New BMT on Count III of the Fourth Claim for Relief avoiding the transfer of the property of Old BMT to BMT Acquisition, for the recovery of the assets of Old BMT, or judgment for the value of the assets, as may be determined at trial, prejudgment interest to the fullest extent allowed by law, post judgment interest until any judgment rendered herein is paid, Trustee's attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

## FIFTH CLAIM FOR RELIEF

### Avoidance and Recovery of Preferential Transfer Against
### BMT Acquisition and Avoidance of Lien of Broad Street Pursuant to 11 U.S.C. §§547 and
### 550 and Avoidance of Lien of BMT Acquisition-NW pursuant to 11 U.S.C. §§544 and 548
### (Airplane)

68.     Trustee incorporates by reference each of the foregoing paragraphs of Trustee's Complaint as if set forth herein.

69.     Under Section 547 of the Bankruptcy Code, the Trustee may avoid and set aside any preferential transfers to creditors as defined therein and constructively fraudulent conveyances may be avoided under Section 548 of the Bankruptcy Code.

70.     Old BMT was the owner of the Piper Cheyenne II Airplane before the completion of the transfer of the Airplane to BMT Acquisition as part of the Friendly Foreclosure. Chase Bank held a security interest in the Airplane to partially secure the Old BMT Chase Bank Loans before the sale of the Chase Bank Loans to BMT Acquisition on June 16, 2011. Chase Bank terminated its notice of lien perfecting its security interest in the Airplane with the FAA on September 26, 2011.

71.     BMT Acquisition-NW obtained a security interest in the Airplane on June 17, 2011 by virtue of the cross collateralization provided in the Old BMT Loan Amendment. Neither BMT Acquisition nor BMT Acquisition-NW perfected its security interest in the Airplane by filing any notice of its lien with the FAA.

72.     The Airplane was transferred by Old BMT to BMT Acquisition as part of the Friendly Foreclosure on July 29, 2011. Old BMT remained the registered owner of the Airplane with the FAA until September 26, 2011. BMT Acquisition did not become the registered owner of the Airplane with the FAA, and the transfer of the Airplane to BMT Acquisition was not completed, until September 26, 2011.

73.     The above captioned bankruptcy case was commenced on September 28, 2011. The transfer of the Airplane to BMT Acquisition was a transfer of Old BMT's property, made within 90 days of the filing of Old BMT's Bankruptcy Case, on account of an antecedent debt, and while Old BMT was insolvent. Given the amount of the claims filed in this case and the lack of assets currently in the estate available to pay such claims, it does not appear that all claims in this Bankruptcy Case will be paid in full. Therefore, such transfer enabled BMT Acquisition to receive more than it would have received if: (i) the Bankruptcy Case was administered under Chapter 7 of the Bankruptcy Code; (ii) the transfer of the Airplane had not occurred; and (iii)

BMT Acquisition had received payment of Old BMT's indebtedness to BMT Acquisition to the extent provided by the provisions of the Bankruptcy Code.

74. The transfer of the Airplane to BMT Acquisition constitutes a preferential transfer which should be avoided pursuant to § 547 of the Bankruptcy Code and the Airplane or its value is recoverable from BMT Acquisition pursuant to § 550 of the Bankruptcy Code. Broad Street is an immediate transferee of BMT Acquisition by virtue of its purported lien on the Aircraft and Broad Street's purported lien on the Airplane should be avoided. The Airplane or the value of the Airplane is recoverable from BMT Acquisition and Broad Street pursuant to § 550 of the Bankruptcy Code.

75. BMT Acquisition-NW's purported security interest in the Airplane by virtue of the June 17, 2011 cross collateralization provided in the Old BMT Loan Amendment was never perfected and should be avoided pursuant to § 544 (a) (1) and (2).

76. The cross collateralization on June 17, 2011 occurred in contemplation of the Friendly Foreclosure which closed on July 29, 2011 and rendered Old BMT insolvent. Old BMT received less than reasonably equivalent value for the cross collateralization which caused its assets, including the Airplane, to become security of the obligations of Old BMT-NW and the purported lien of BMT Acquisition-NW on the assets of Old BMT, including the Airplane, should be avoided as a constructively fraudulent conveyance pursuant to Section 548 (a) (1) (B) of the Bankruptcy Code.

WHEREFORE, Trustee prays that this Court grant judgment in favor of Trustee and against BMT Acquisition, Broad Street and BMT Acquisition-NW on the Fifth Claim for Relief avoiding the purported lien of Broad Street and Acquisition-NW on the Airplane, avoiding the purported lien of BMT Acquisition-NW on all other assets of Old BMT, for recovery and turnover of the Airplane or its value, which is believed to be not less than $600,000, as may be

determined at trial, prejudgment interest to the fullest extent allowed by law, post judgment interest until any judgment rendered herein is paid, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

## SIXTH CLAIM FOR RELIEF

### Avoidance and Recovery of Postpetition Transfer Against
### BMT Acquisition Pursuant to 11 U.S.C. §§549 and 550
### (Logo)

77.     Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

78.     Old BMT was the owner of the Logo before the completion of the transfer of the Logo to BMT Acquisition as part of the Friendly Foreclosure. BMT Acquisitions did not register its ownership of the Logo with the USPTO until April 12, 2012 and its ownership did not become effective until that date.

79.     This Bankruptcy Case was commenced as an involuntary bankruptcy on September 28, 2011 and the order for relief was entered on October 28, 2011. The transfer of the Logo to BMT Acquisition and BMT Acquisition's post-petition registration of the Logo constitute, pursuant to Section 549 (a) of the Bankruptcy Code, post-petition transfers of property of Old BMT to BMT Acquisition which were not authorized by the Bankruptcy Code or by this Court. Trustee is entitled to recover the value of the Logo from BMT Acquisition pursuant to Section 550 (a) of the Bankruptcy Code.

WHEREFORE, Trustee prays that this Court grant judgment in favor of Trustee and against BMT Acquisition on the Sixth Claim for Relief for recovery and turnover of the Logo or the value of the Logo as may be determined at trial, for prejudgment interest to the fullest extent

allowed by law, post judgment interest until any judgment rendered herein is paid, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

## SEVENTH CLAIM FOR RELIEF

### Avoidance and Recovery of Preferential Transfer Against
### Broadway Properties Pursuant to 11 U.S.C. §§547 and 550
### (Payments)

80. Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

81. During the period from November 17, 2010 through July 15, 2011 Old BMT made rent payments totaling $384,720 to Broadway Properties and made an additional payment of $26,000 on July 11, 2011 for accrued back rental due on Old BMT's offices located at 8301 Broadway SE, Albuquerque, New Mexico. On information and belief, the July 15, 2011 $26,000 payment was a lump sum rent payment for back rent and the $384,720 in payments were irregular sporadic payments for back rent (collectively sometimes hereinafter referred to as the "Payments").

82. At the time the Payments were made, Travelstead owned 99% of Broadway Properties and owned 100% of Old BMT. Broadway Properties and Old BMT are Affiliates as defined in Section 101 (2) (B) of the Bankruptcy Code and Broadway Properties is an insider of Old BMT as defined in Section 101 (31) of the Bankruptcy Code.

83. The above captioned bankruptcy case was commenced on September 28, 2011. The Payments to Broadway Properties were transfers of Old BMT's property, made within one-year of the filing of Old BMT's bankruptcy case, on account of an antecedent debt, and while Old BMT was insolvent. Given the amount of the claims filed in this Bankruptcy Case and the

28

lack of assets currently in the estate available to pay such claims, it does not appear that all claims in this case will be paid in full. Therefore, such transfer enabled Broadway Properties to receive more than it would have received if: (i) the Bankruptcy Case was administered under Chapter 7 of the Bankruptcy Code; (ii) the Payments had not been made; and (iii) Broadway Properties had received payment of Old BMT's indebtedness to Broadway Properties to the extent provided by the provisions of the Bankruptcy Code.

84.     The Payments from Old BMT to Broadway Properties constitute preferential transfers which should be avoided pursuant to § 547 of the Bankruptcy Code and the Payments or their value is recoverable from Broadway Properties pursuant to § 550 of the Bankruptcy Code.

WHEREFORE, Trustee prays that this Court grant judgment in favor of Trustee and against Broadway Properties on the Seventh Claim for Relief in the amount of $410,720 or such other amount as may be determined at trial, for prejudgment interest to the fullest extent allowed by law, post judgment interest until any judgment rendered herein is paid, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

**EIGHTH CLAIM FOR RELIEF**

**Count I - Disallowance of Claim of
BMT Acquisition Pursuant to 11 U.S.C. §502 (d)
(Disallowance)**

85.     Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

86.     BMT Acquisition is the transferee of transfers which are avoidable pursuant to Sections 547, 548 and 549 of the Bankruptcy Code. BMT Acquisition has not paid the amount of

29

the transfers or turned over the property for which BMT Acquisition is liable under Section 550 of the Bankruptcy Code.

87.     BMT Acquisition's claim filed herein must be disallowed unless BMT Acquisition pays to Trustee the aggregate amount of all transfers for which BMT Acquisition is liable, plus interest and Trustee's costs.

WHEREFORE, Trustee prays the this Court grant judgment in favor of the Trustee and against BMT Acquisition on Count I of the Eighth Claim for Relief disallowing the claim of BMT Acquisition, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

**Count II - Disallowance of Claim of
BMT-NW Acquisition Pursuant to 11 U.S.C. §502 (d)
(Disallowance)**

88.     Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

89.     BMT-NW Acquisition is the transferee of transfers which are avoidable pursuant to Sections 547 and 548 of the Bankruptcy Code. BMT-NW Acquisitions has not paid the amount of the transfers or turned over the property for which BMT-NW Acquisition is liable under Section 550 of the Bankruptcy Code.

90.     BMT-NW Acquisition's claim filed herein must be disallowed unless BMT-NW Acquisition pays to Trustee the aggregate amount of all transfers for which BMT-NW Acquisition is liable, plus interest and Trustee's costs.

WHEREFORE, Trustee prays that this Court grant judgment in favor of Trustee and against BMT-NW Acquisition on Count II of the Eighth Claim for Relief disallowing the claim of BMT-NW Acquisition, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

## NINTH CLAIM FOR RELIEF

### Count I - Equitable Subordination of NEW BMT Claims

91.     Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

92.     BMT Acquisition and BMT-NW Acquisition have filed proofs of claim in  this Bankruptcy Case in the amount of $3,569,755 and $1,811,064, respectively.

93.     The conduct of BMT Acquisition and BMT-NW Acquisition specified in this complaint is inequitable conduct which has damaged Old BMT and its creditors. The claims of BMT Acquisition and BMT-NW Acquisition should be equitably subordinated to the claims of the other creditors in this Bankruptcy Case, pursuant to Section 510 (c) of the Bankruptcy Code.

94.     The equitable subordination of the claims of BMT Acquisition and BMT-NW Acquisition herein is not inconsistent with the provisions of the Bankruptcy Code. Trustee is entitled to an order: (a) subordinating for purposes of distribution of any funds recovered by the Old BMT bankruptcy estate the claims of BMT Acquisition and BMT-NW Acquisition to all other claims filed in this Bankruptcy Case; and/or (b) transferring any liens securing the claims of BMT Acquisition and BMT-NW Acquisition to the Old BMT bankruptcy estate.

WHEREFORE, Trustee prays that this Court grant judgment in favor of Trustee and against BMT Acquisition and BMT-NW Acquisition on Count I of the Ninth Claim for Relief subordinating for purposes of distribution of any funds recovered by the Old BMT bankruptcy estate the claims of BMT Acquisition and BMT-NW Acquisition to all other claims filed in this Bankruptcy Case and transferring any liens securing the claims of BMT Acquisition and BMT-NW Acquisition to the Old BMT bankruptcy estate, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

## Count II - Recharacterization of Old BMT's
## Debt to BMT Acquisition as Equity in Old BMT

95.　Trustee incorporates by reference each of the foregoing paragraphs of the Trustee's Complaint as if set forth herein.

96.　The transfers of the property of Old BMT to BMT Acquisition as specified hereinbefore constituted a *de facto* merger of Old BMT and BMT Acquisition, and BMT Acquisition is a mere continuation of Old BMT.

97.　On June 2, 2011, Longroad proposed that a portion of Longroad's investment in acquiring the Old BMT Chase Bank Loans and obtaining the assets of Old BMT would be converted to equity of a holding company, (which eventually became Broad Street), which would own 100% of BMT Acquisition. The right of Travelstead to obtain increasing equity ownership in the holding company was tied to distributions to Longroad equal to various multiples of Longroad's money "invested" in the transaction.

98.　While the proposal changed in certain details, the shareholder agreement and employment agreement Travelstead eventually entered into with Broad Street or its affiliates was essentially the same as outlined in the June 2, 2011 Longroad proposal.

99.　No true debt from Old BMT to BMT Acquisition existed after the Friendly foreclosure. The amounts paid for the acquisition of the Old BMT Chase Bank Loans and the credit given by BMT Acquisition to Old BMT on these loans were treated by the parties as contributions to equity by BMT Acquisition.

100.　The claims of BMT Acquisition in this Bankruptcy Case should be recharacterized as equity and should be stricken as secured or unsecured claims, and BMT Acquisition should be treated as an equity interest holder of Old BMT and not as a creditor.

WHEREFORE, Trustee prays that this Court grant judgment in favor of Trustee and against BMT Acquisition on Count II of the Ninth Claim for Relief ordering that the claim of BMT Acquisition filed herein be recharacterized as equity and BMT Acquisition's claim in this Bankruptcy Case be stricken as a secured or unsecured claim, and BMT Acquisition be treated as an equity interest holder of Old BMT and not as a creditor, Trustees attorneys' fees to the extent allowed by law, for Trustee's costs and expenses herein, and for such other and further relief as is just and proper.

Respectfully submitted,

FOULSTON SIEFKIN LLP
1551 North Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466

By: _____

Terry C. Cupps (admitted *pro hac vice*)
Kansas Supreme Ct. No. #11299
316-291-9505
866-738-3154 fax
tcupps@foulston.com
and
Robert L. Howard (admitted *pro hac vice*)
Kansas Supreme Ct. No. #5485
316-291-9553
866-450-2990 fax
rhoward@foulston.com

Attorneys for Michael J. Caplan, Trustee